WILLIAM HARTWIG V. EMELIE FLYNN *et al.*

No. 15,774. (100 Pac. 642.)

SYLLABUS BY THE COURT.

1. EXECUTORS AND ADMINISTRATORS — *Return of Property of Estate — Property Claimed by Executor.* An executor who claims to own in his individual right certain promissory notes payable to his own order, but found among the effects of the testator, should not be compelled to make an unqualified return of such securities as the property of the estate. The practice in such case discussed.

2. JURISDICTION — *Probate Court — Title and Ownership.* The probate court has no jurisdiction to try the title and finally determine the ownership of such securities so claimed by the executor himself and by another person not a party to the proceeding. Such adverse claims can only be determined in a court of competent jurisdiction.

Error from Allen district court; OSCAR FOUST, judge. Opinion filed March 6, 1909. Reversed.

STATEMENT.

GOTTLIEB HARTWIG died May 28, 1905, leaving a will naming his son William as his executor. Among his effects were found several promissory notes, among

others notes for $2500 and $800, respectively, payable to the order of William Hartwig, and one for $1500 payable to the order of Frederick Hartwig, another son. These notes were each secured by mortgages to the payees, which had been recorded. Martin Hendricks, who was a son-in-law with whom the testator had lived, and the two sons, William and Frederick, looked over these notes immediately after the death of Gottlieb, and William Hartwig took into his possession the box in which they were found. Two of the notes in this box were handed over to Frederick as his property by Martin Hendricks and William Hartwig. The others were inventoried, except the notes for $2500, $800 and $1500 before mentioned.

On July 3, 1905, William Hartwig was appointed and qualified as executor. In the following November Emelie Flynn and Emma Hess, grandchildren of the deceased, heirs of their mother, a devisee and legatee under the will, filed a petition in the probate court asking for the removal of the executor for unfaithful administration in failing to inventory the three notes before mentioned. A citation was issued, and a hearing had upon this motion November 15, 1905. The court found then that the executor had failed to inventory the notes referred to; that they were in his hands; and made an order that he place them upon his inventory within fifteen days or be removed. He then filed a verified schedule of the three notes, stating the adverse claims thereto. The petitioners then asked for the removal of the executor because he had not complied with the former order. He was thereupon removed and ordered to turn over to the administrator to be appointed all of the property and assets of the estate of Gottlieb Hartwig in his possession, and James Lockhart was appointed administrator in his place.

From this order William Hartwig appealed to the district court, and upon the trial that court made an order finding that at the time of the death of Gottlieb

Hartwig there was in his possession, and after his death found among the assets of his estate, in addition to the notes and moneys inventoried, the promissory notes before referred to. The court further found:

"(7) That the plaintiffs had good reason to believe that the most, if not all, of said notes belonged to the estate of Gottlieb Hartwig, deceased, and are entitled to have the question of title and ownership thereof settled in a proper proceeding brought in a court of competent jurisdiction, and that the proper person to bring said suit is the executor or administrator of said estate.

"(8) The court further finds that because of the interest and claims of the said executor, William Hartwig, and from his return made to the order of the probate court requiring him to inventory said notes as assets of said estate, that he, the said William Hartwig, is not a suitable person to administer said estate."

The district court then ordered that William Hartwig be removed as executor "and deliver to the administrator to be appointed  .  .  .  all property, moneys, goods and chattels in his hands or under his control belonging to the estate of Gottlieb Hartwig, deceased." This order was made March 3, 1906, and on the 20th day of March, following, William Hartwig filed his final report, in which he did not account for the three notes which he claimed did not belong to the estate. The same grandchildren thereupon filed their protest and objections against the approval of this report. The probate court approved the report so far as it accounted for all other property and effects, and then ordered as follows:

"Inasmuch as there is property claimed to belong to the estate as set forth in finding number three (3) that is not accounted for in his report, it is by the court ordered that in order that the title to the notes mentioned in finding number three may be legally determined by a court of competent jurisdiction the hearing of the final report is continued until the next term of court."

No further proceedings were taken until May 5, 1906, when the court made a further order that these notes be delivered to James Lockhart, administrator, within ten days. From this last order an appeal was taken to the district court, where the judgment was rendered which is now brought here for review. The court made findings of fact to the effect that these notes and mortgages belonged to the estate, and that William Hartwig should deliver them to his successor within ten days, or that, upon his failure to do so, the administrator should proceed under the directions of the probate court to obtain possession of and collect the same.

William Hartwig objected to the jurisdiction of the court to try and determine the title to the notes, and this is the principal question now presented.

*Lamb & Hogueland,* for plaintiff in error.

*G. A. Amos, L. V. Orton, H. A. Ewing, S. A. Gard,* and *G. R. Gard,* for defendants in error.

The opinion of the court was delivered by

BENSON, J.: When ordered to return an inventory of these notes the executor filed a schedule of such securities, stating that they never came into his hands as executor but that two of them belonged to him by gift from his father, and the other belonged to his brother, Frederick, by like gift. A full description of the notes and mortgages was given, with a statement that he could not make a sworn return of the same as a part of the estate for the reason that such return would not be true. This schedule put upon the records of the court a full description of the securities, and of the claims of the respective parties thereto. In *Simms v. Guess,* 52 Ill. App. 543, a case where an administrator claimed to own certain personal property which he was

Hartwig v. Flynn.

ordered to return as belonging to the estate, it was said:

"The administrator or executor is not the sole judge of the performance of that duty. Necessarily the ultimate determination must rest in the court, otherwise, if the representative refused to inventory any property, the court would be powerless to administer on the estate." (Page 545.)

Appearing to appreciate the hardship of a rule that would require an administrator who honestly believed that he owned the property to swear that it belonged to the estate, the court said:

"The representative, if he claims property ordered to be inventoried, can note the fact in explanation of his action on the inventory (*Lynch v. Dinan,* 66 Wis. 490, 29 N. W. 213; *Hilton v. Briggs,* 54 Mich. 265, 20 N. W. 47), which would not bar him of a hearing on the merits in a regular trial at law; such an order would be only interlocutory and not an adjudication of the right of property." (Page 545.)

It has been held that where an administrator had knowledge of notes in the hands of a stranger which he claimed as his own his duty would be discharged by placing the notes upon the inventory accompanied by a statement of his claim to the property as his own, and that by so doing the condition of his bond or of his own rights would be saved; that he ought to place on record the nature and amount of the property so claimed by him for the benefit of all concerned. (*Potter v. Titcomb,* 10 Maine 53.)

In *In re Belt's Estate,* 29 Wash. 535, 70 Pac. 74, 92 Am. St. Rep. 916, it was said that in an application to compel an administrator to inventory certain property the probate court may determine whether it belongs to the estate or the estate has any reasonable claim thereto, but that such determination is not binding on any person afterward claiming the property in another forum but is only for the purpose of determining whether the administrator shall be compelled to make

an inventory thereof. In that case the administratrix claimed that the property belonged to herself and her two children individually, and was no part of the estate. In the opinion it was said that the probate court had jurisdiction to determine whether the property belonged *prima facie* to the estate, but that such decision was not binding upon any person claiming property.

In *Stewart's Estate,* 137 Pa. St. 175, 20 Atl. 554, it was held that an inventory was only *prima facie* evidence that the property belonged to the estate, and that this applied not only when the property was claimed by a third party but also when the administrator claimed it himself. But the court also said:

"It is so extraordinary a suggestion for the administrator to lay claim as his own to that which apparently he has voluntarily inventoried as part of the estate that he can only be allowed to prevail in such claims upon the clearest and most satisfactory evidence." (Page 181.)

It is not perceived how the plaintiff in error could, consistently with the claims of adverse ownership, make an unqualified return that these securities belonged to the estate. An inventory must be verified as just and true (Gen Stat. 1901, § 2859), and an executor who believes that property belongs to himself should not be compelled to swear that it is the property of the estate. The return made in response to the order gave the court the same information that a more formal inventory accompanied by a statement of the adverse claims would have done, and was a sufficient basis for an order for proceedings to determine the title to this property.

Other cases might be cited to the effect that the probate court in a like proceeding has jurisdiction incidentally to determine the title to property apparently belonging to the estate but to which the administrator or some third party makes claim, but such determina-

tion is merely for the purpose of facilitating the orderly progress of business in that court, and does not determine the ultimate rights of the parties. Such rights must be determined in a court of competent jurisdiction. (1 Woerner, Am. Law of Adm., 2d ed., § 151; *Succession of McKinney*, 5 La. Ann. 748; *Succession of Carcagno*, 43 La. Ann. 1151, 10 South. 251; *Miers v. Betterton*, 18 Tex. Civ. App. 430, 45 S. W. 430; *Lynch v. Divan, Ex'r, etc.*, 66 Wis. 490, 29 N. W. 213. See, also, *In re Wolford*, 10 Kan. App. 283, 62 Pac. 731; *Humbarger v. Humbarger*, 72 Kan. 412, 83 Pac. 1095, 115 Am. St. Rep. 204.)

In a case in California where a legatee objected to the settlement of an executor's account, upon the ground that the accountant had failed to charge himself with property belonging to the estate, the executor answered that the property was in his hands as guardian of a minor to whom it belonged, and objected to the hearing of the question of title by the probate court. That court, nevertheless, proceeded to hear the matter, and found that the property belonged to the estate and charged the executor with its value. Upon appeal it was said:

"The issues raised by the objections of the legatee to the account, and the answer of the executor to such objection, directly involved the question as to where the legal title to this personal property rested, and that was an issue the probate court had no power to hear and determine. There are many matters relating to the estates of deceased persons of which the probate court has no jurisdiction, and the determination of the question of title to property is essentially one of them. When it became apparent from the pleadings that matters of title to property were at issue, such matters should have been left to other courts for determination, care being exercised that all parties interested should be fairly and fully represented at the trial." (*In re Haas*, 97 Cal. 232, 234, 31 Pac. 893, 32 Pac. 327.)

Upon the first appeal the district court did not attempt to determine the title to the notes in controversy,

and only found that the petitioners had good grounds to believe that the notes belonged to the estate and that an action should be brought in a court of competent jurisdiction to determine the title and ownership. This order left the way clear for a proceeding by the new administrator to bring a proper action to assert his dominion over these notes or to collect them. The probate court, however, instead of directing such action, proceeded upon the hearing of the former executor's final account to make an order that he turn the notes over to the administrator, and upon the appeal from this order the district court, over the objections of the plaintiff in error, proceeded to try and determine the title to the securities. This was beyond its jurisdiction in such a proceeding. It could upon such appeal only exercise the jurisdiction of the probate court. (*Ross v. Woollard*, 75 Kan. 383, 89 Pac. 680.) As the orders made upon the first appeal determined the matters within the jurisdiction of the court, it was only necessary upon the last appeal to direct that such former order be executed, or to make another order directing proceedings to be taken to determine the title to the notes and provide for their collection.

The judgment is reversed, and the cause remanded for further proceedings in accordance with the views herein expressed.