Yockey v. Yockey.

---

No. 19,496.

WILLIAM YOCKEY and CHARLES YOCKEY, *Appellees*, v. CHRISTOPHER C. YOCKEY, Individually and as Administrator, etc., and ELIZA YOCKEY, *Appellants*.

SYLLABUS BY THE COURT.

DESCENTS AND DISTRIBUTIONS—*Title to Trust Funds—Jurisdiction of Probate Court—Limitation of Actions.* Children of an aged and infirm landowner entered into an agreement relating to the land which secured a portion of the tract to a deaf-mute son, with ultimate title to his children. After the death of the owner his widow and all his children joined in a sale of the entire tract, but the proper share of the purchase money was placed to the credit of the beneficiary of the contract, who was presently adjudged to be of feeble mind and who

later died. The fund was considered, treated, and accounted for as belonging to the beneficiary of the contract under such circumstances as to estop the widow and heirs of the deceased landowner to deny that the fund became his property, passed to his guardian, and then to his administrator. Afterwards the administrator procured an adjudication of the probate court that the fund had been mistakenly inventoried as a part of the estate in his charge, and that it belonged to the widow. Within five years after the adjudication the children of the beneficiary brought suit in the district court to determine title to the fund. No final settlement of the estate has been made. *Held:* 1. The existence of a consideration for the contract at the time it was made is not now material. 2. The probate court had no power to determine title to the fund. 3. The plaintiffs invoked the proper remedy in the proper forum. 4. The action was not one for relief on the ground of fraud and was not barred by the statute of limitations.

Appeal from Neosho district court; JAMES W. FIN-LEY, judge. Opinion filed May 8, 1915. Affirmed.

*W. R. Cline,* and *J. Q. Stratton,* both of Erie, for the appellants.

*S. C. Brown, H. P. Farrelly,* and *T. R. Evans,* all of Chanute, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action was one to determine the title to a fund of money. A motion to dismiss the action on the ground of want of jurisdiction and a demurrer to the petition were overruled. A demurrer to the affirmative defenses pleaded in the answer was sustained, and the defendants appeal.

David Yockey was the owner of a quarter section of land which was the homestead of himself and his wife, Eliza Yockey. David Yockey died in January, 1905, leaving as his heirs his wife and several adult sons and daughters. One of the sons was Levi S. Yockey, who was a deaf mute. On March 11, 1905, Levi was adjudged to be of feeble mind, and his brother, Christopher C. Yockey, was appointed his guardian. In November, 1907, Levi died, and in December Christopher

Yockey v. Yockey.

was appointed administrator of his estate. Levi left
two sons, William and Charles, who are the plaintiffs.
The defendants are Christopher C. Yockey, as an indi-
vidual and as administrator of the estate of Levi S.
Yockey and Eliza Yockey.

Briefly summarized, the petition shows that on ac-
count of the great age and infirmity of David Yockey,
his children, before his death and on August 3, 1904,
entered into an agreement relating to a disposition of
the homestead to be carried out in the future in accord-
ance with desires which David Yockey had expressed.
Under this agreement sixty acres of the homestead
were secured to Levi and title was to be conveyed to
him in trust for his children. Provision was made for
the support of Eliza Yockey, who was very old, during
her lifetime, and for a distribution of the portion of the
homestead not set apart for Levi and his children, at
her death. After David Yockey's death, and in March,
1905, his entire homestead was sold for the sum of
$4000. The widow and heirs all joined in the deed.
Out of the proceeds of this sale and for the purpose of
carrying out the agreement referred to the proportion-
ate share of $1550.68 was placed to the credit of Levi
S. Yockey and was thereafter considered, treated, and
accounted for as belonging to him and to his estate,
until in April, 1908. The allegations of the petition
are such as to show an equitable estoppel upon all the
heirs of David Yockey, including the widow, to deny
that this fund became the property of Levi, passed to
his guardian, and then passed to the administrator of
his estate. After the death of Levi his guardian ren-
dered a final account showing the sum of $1447.47 on
hand on December 27, 1907, with which sum the ad-
ministrator charged himself. On April 6, 1908, the
administrator presented to the probate court an *ex
parte* application alleging that the fund in question
was derived from the sale of David Yockey's home-
stead, that the proceeds of such sale were not subject

to division or distribution during Eliza Yockey's lifetime, and that the fund had been mistakenly inventoried as a part of Levi's estate. The prayer was for permission to correct the inventory and to pay over the fund to the rightful owner, and for a discharge from further obligation as to such fund. The application was granted, the inventory of the administrator was corrected, the balance of the fund was turned over to Eliza Yockey, and upon the presentation of a receipt from her the administrator was discharged from further responsibility for the fund. No final settlement of the estate of Levi Yockey has been made.

The prayer of the petition, which was filed in January, 1913, was that the ownership of the fund in question be determined and that the fund be adjudged to be the property of the estate of Levi Yockey.

The motion to dismiss asserted that the district court had no jurisdiction of the action, because the probate court still had jurisdiction over the settlement of the estate of Levi Yockey. While the probate court had jurisdiction to settle the estate and to supervise the conduct and accounts of the administrator, it had no jurisdiction to determine the ownership of this fund, its attempt to do so in April, 1908, was void, and the district court was the proper tribunal to make the adjudication. (*Humbarger v. Humbarger,* 72 Kan. 412, 83 Pac. 1095; *Hartwig v. Flynn,* 79 Kan. 595, 100 Pac. 642; *Dobson v. Holmes,* 83 Kan. 476, 112 Pac. 131; *In re Moran,* 83 Kan. 615, 112 Pac. 94; *Leyerly v. Leyerly,* 87 Kan. 307, 124 Pac. 405; *Gille v. Emmons,* 91 Kan. 462, 138 Pac. 608.)

The motion to dismiss, the demurrer to the petition, and certain defenses of the answer were based on the motion that the action was one for the tort of the administrator, or for the fraud of the administrator, in procuring the special settlement of April, 1908, and in paying over the money to Eliza Yockey, and that the remedy lay in proceedings in the probate court to compel the administrator to restore the fund. If no title

to the fund ever vested in Levi Yockey, and then in the administrator of his estate, there could be no tort or fraud committed in correcting the administrator's inventory and in his disposing of the fund accordingly. If title to the fund did vest in Levi, and then in the administrator of his estate, the *ex parte* special settlement amounted to nothing, in contemplation of the law the fund is still in the hands of the administrator, and he may have some difficulty in making final settlement and in procuring the discharge of his bondsmen until he accounts for it. But the existence of tort and fraud, or of no tort and fraud, depends upon something which the probate court is powerless to adjudicate, namely, title to the fund. The probate court could not try title as a basis for the order to pay out the money, and it could not try title as the basis of an order to restore the money. The district court alone can say to whom the fund belongs, and until that court pronounces judgment on the subject the character of the administrator's conduct, whether tortious or fraudulent or not, and the probate court remedy to secure an accounting for the fund are not material.

The demurrer and portions of the answer raise the question of the applicability of the two-year statute of limitations. It is said that the action was one for relief on the ground of fraud, the probate record of April, 1908, disclosed the fraud to the plaintiffs as soon as it was made, and consequently that the action was barred in 1910. No fraud on the part of anybody was pleaded or even suggested in the petition. The probate proceedings were not characterized as being taken for any other than the honest purpose to correct the supposed error made in including the fund in the inventory of Levi's estate. The probate proceedings are simply attacked as being beyond the jurisdiction of the probate court so far as they adjudicated title to the fund. This attempted adjudication and the action of the administrator pursuant to it constituted a denial of the plaintiffs' rights as heirs of Levi's estate and gave rise to a

cause of action in their behalf. No other provision of the statute of limitations being applicable, the sixth subdivision of section 17 of the civil code governs:

"An action for relief not hereinbefore provided for can only be brought within five years after the cause of action shall have accrued."

The answer pleaded want of consideration for the agreement securing the sixty acres of land to Levi. When the agreement was carried out under circumstances making it inequitable for any one to question its binding force, the matter of an original consideration for it became immaterial.

Nothing else contained in the answer tends in any degree to defeat the estoppel pleaded in the petition, and if, as the defendant's claim, they have answered fully, the case should be tried on the petition of the plaintiffs and the denials of the defendants.

The judgment of the district court is affirmed.